UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

October 2018 Grand Jury

UNITED STATES OF AMERICA,

     Plaintiff

     v.

PURE ASSAY INGREDIENTS, INC.,
LYNN CHAU,
BAO LUU,
ALEX WANG, and
IVY HE,

     Defendants.

CR No. 18-   18CR00771-DSF

I N D I C T M E N T

[18 U.S.C. § 371: Conspiracy;
18 U.S.C. § 545: Passing False and
Fraudulent Papers Through a
Customhouse; 18 U.S.C. § 1519:
Obstruction of Justice; 18 U.S.C.
§ 1956(h): Conspiracy to Commit
Money Laundering; 18 U.S.C.
§§ 2(a), (b): Aiding and Abetting
and Causing an Act to Be Done; 18
U.S.C. §§ 545, 982; 28 U.S.C.
§ 2461(c): Criminal Forfeiture]

The Grand Jury charges:

INTRODUCTORY ALLEGATIONS

At all times relevant to this Indictment:

1.   Beginning in or about no later than 2010, defendants LYNN
CHAU ("CHAU") and BAO LUU ("LUU") were principals of defendant PURE
ASSAY INGREDIENTS, INC. ("PURE ASSAY"), a California corporation that
sold ingredients to dietary supplement and food manufacturers in the

United States.   Defendant PURE ASSAY's most recent business location was an office and warehouse space located in City of Industry, California.

2.   Defendant PURE ASSAY maintained an office in Chengdu, China, at which defendants ALEX WANG ("WANG") and IVY HE ("HE") worked.   The Chengdu office was responsible for preparing shipments of ingredients for export to the United States.

3.   Unindicted Co-Conspirator Company #1 was a purportedly dissolved California corporation involved in the retail sales of fruit baskets.   Although she was not listed as a corporate officer, defendant CHAU effectively controlled Unindicted Co-Conspirator Company #1 and its bank accounts.

4.   These Introductory Allegations are hereby re-alleged and incorporated into each and every count of this Indictment.

COUNT ONE

[18 U.S.C. § 371]

A.   OBJECTS OF THE CONSPIRACY

1.   Beginning in or about no later than April 2015 and continuing to in or about November 2018, in Los Angeles County, within the Central District of California, and elsewhere, defendants PURE ASSAY, CHAU, LUU, WANG, and HE, together with others known and unknown to the Grand Jury, knowingly conspired and agreed with each other to:

a.   knowingly and willfully, with the intent to defraud the United States, make out and pass, and attempt to pass, through the customhouse false, forged, and fraudulent documents, in violation of Title 18, United States Code, Section 545;

b.   fraudulently and knowingly import and bring into the United States merchandise contrary to law and receive, conceal, buy, sell, and in any manner facilitate the transportation, concealment, and sale of such merchandise after importation, knowing the same to have been imported and brought into the United States contrary to law, in violation of Title 18, United States Code, Section 545; and

c.   defraud the United States and an agency thereof by obstructing the lawful functions of the United States Food and Drug Administration ("FDA") and United States Customs and Border Protection ("CBP") by deceitful and dishonest means, in violation of Title 18, United States Code, Section 371.

B.   MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE ACCOMPLISHED

2.   The objects of the conspiracy were to be accomplished, in substance, as follows:

3

a.    Defendants PURE ASSAY and CHAU would solicit orders from dietary supplement and food manufacturers in the United States for ingredients to be used in the manufacturers' products.

b.    After identifying an ingredient to import into the United States, defendants PURE ASSAY, CHAU, WANG, and HE would evaluate whether that ingredient might be unlawful to export from China and import into the United States as an ingredient for a dietary supplement or other food ingredient.  Defendants PURE ASSAY, CHAU, WANG, and HE also would evaluate whether exporting and importing such an ingredient, even if legal, might invite extra scrutiny from government agencies such as the FDA or CBP.

c.    If defendants PURE ASSAY, CHAU, LUU, WANG, and HE believed an ingredient could present such issues, the defendants would take steps to misrepresent the ingredient as a different substance and hide the true nature of the ingredient from the FDA, CBP, and other government agencies during the importation process and after the ingredient arrived at defendant PURE ASSAY's facilities in California.

d.    Defendants PURE ASSAY, CHAU, WANG, and HE would prepare and cause to be prepared false and fraudulent documents that would be submitted to and shown to the FDA and CBP, including false customs declarations, false prior notices of imported foods, false certificates of analysis, false invoices, and false labels.

e.    Defendant PURE ASSAY personnel located in China would frequently prepare a "master packing list" that would tell defendant PURE ASSAY personnel in the United States the true identities of the items in shipments, often using asterisks to denote items whose names

1  had been changed and using the euphemism "shipping name" to notify

2  warehouse employees that the items were smuggled using other names.

3       f.   Defendants PURE ASSAY and CHAU would endeavor to

4  increase their profit margins by minimizing the costs and risks

5  associated with importing substances under their true and accurate

6  names.  Defendants PURE ASSAY and CHAU knew that, if they declared

7  certain high-value substances under their true and correct names,

8  they might incur additional costs, including costs associated with

9  government scrutiny of those imports or costs associated with the

10  government's refusal of those items.

11       g.   Defendants PURE ASSAY and CHAU would frequently send

12  money to accounts in China and Hong Kong in order to pay the expenses

13  associated with defendant PURE ASSAY's smuggling activities in China.

14  Many of these payments would be made into accounts that were not in

15  the names of the funds' actual intended recipients.

16  C.   OVERT ACTS

17       3.   On or about the following dates, in furtherance of the

18  conspiracy and to accomplish its objects, defendants PURE ASSAY,

19  CHAU, LUU, WANG, and HE, and other co-conspirators known and unknown

20  to the Grand Jury, committed various overt acts within the Central

21  District of California and elsewhere, including, but not limited to,

22  the following:

23       Overt Act No. 1:   On or about April 27, 2015, defendants PURE

24  ASSAY and CHAU agreed in an email with a third party to import 500 kg

25  of the stimulant 1,3-dimethylamylamine ("DMAA") into the United

26  States.

27

28

5

Overt Act No. 2:    On or about June 9, 2015, defendant CHAU sent an email to that third party confirming that the 500 kg of DMAA was falsely labeled as "L-Glutamine."

Overt Act No. 3:    On or about July 13, 2015, defendant CHAU sent an email to defendants WANG and HE in which she discussed several different ways to smuggle "products we don't want FDA to see" into the United States, including using false product names and lying to the FDA about whether the substance was being imported for research purposes only.

Overt Act No. 4:    On or about March 21, 2016, defendant HE prepared an internal "master packing list," which was sent to defendants CHAU and WANG, stating that an item's "shipping name" was "L-CITRULLINE DL-MALATE," but in fact the substance was the stimulant methylsynephrine.

Overt Act No. 5:    On or about May 13, 2016, defendants PURE ASSAY and CHAU submitted a prior notice of imported food to the FDA identifying an article of food to be imported in a shipment as "L-Glutamine."  The article was actually DMAA.

Overt Act No. 6:    On or about May 13, 2016, defendant HE prepared an internal "master packing list," which was sent to defendants CHAU and WANG, stating that the item's "shipping name" was "L-Glutamine," but that the substance was in fact DMAA.

Overt Act No. 7:    On or about June 21, 2016, to hide their smuggling scheme from the government and others, defendant CHAU directed third party A.G. to wire money into an account in the name of Unindicted Co-Conspirator Company #1 as payment for the smuggled DMAA that had entered the United States as "L-Glutamine."

1   <u>Overt Act No. 8</u>:   In or around August 2016, defendants CHAU
2   and PURE ASSAY imported a shipment containing an ingredient correctly
3   labeled as the artificial sweetener sucralose, but also containing
4   DMAA mislabeled as sucralose.

5   <u>Overt Act No. 9</u>:   On or about August 24, 2016, in his role as
6   defendant PURE ASSAY's warehouse logistics manager, defendant LUU
7   sent an email to defendant CHAU stating that defendant CHAU had
8   provided incomplete records to the warehouse for a shipment, noting
9   that the shipment contained "2 product[s] named 'Sucralose', the real
10  one and DMAA."

11  <u>Overt Act No. 10</u>:   On or about August 24, 2016, defendant LUU
12  warned defendant CHAU that a record not specifying which goods were
13  being imported under false names could cause "trouble" and told
14  defendant CHAU that "we need to be more careful."

15  <u>Overt Act No. 11</u>:   In or around May 2017, defendants PURE ASSAY
16  and CHAU distributed to customers in the United States at least one
17  ingredient that the FDA had refused to admit.

18  <u>Overt Act No. 12</u>:   On or about July 5, 2017, defendant WANG
19  directed defendant CHAU to send money to an account in China in the
20  name of C.X.

21  <u>Overt Act No. 13</u>:   On or about July 11, 2017, defendants PURE
22  ASSAY and CHAU wired $8,714.26 from a bank account in the United
23  States to a bank account in China to pay the expenses associated with
24  defendant PURE ASSAY's smuggling activities in China.

25  <u>Overt Act No. 14</u>:   On or about August 28, 2017, after several
26  items in a shipment by defendant PURE ASSAY were refused admission
27  into the United States by the FDA and CBP, defendants PURE ASSAY and
28  CHAU promised the FDA that the refused items would be destroyed.

Overt Act No. 15:   In or around September 2017, defendants PURE ASSAY, CHAU, and LUU created and caused to be created a fake shipment of goods that was designed to match (in terms of documentation, labels, number of containers, and weights) the refused items.

Overt Act No. 16:   In or around September 2017, defendants CHAU, PURE ASSAY, and LUU sent and caused to be sent the fake shipment to a processing facility, where the FDA witnessed the destruction not of the goods that had been refused admission, but instead of the substituted, fake shipment.

Overt Act No. 17:   In or around March 2018, defendants CHAU and PURE ASSAY attempted to import a stimulant called 1,4-DMAA with false documentation identifying it as L-tyrosine.

Overt Act No. 18:   On or about March 27, 2018, defendants PURE ASSAY and CHAU submitted a prior notice of imported food to the FDA identifying an article of food to be imported in a shipment as "L-tyrosine."  The article was actually 1,4-DMAA.

Overt Act No. 19:   In or around April 2018, defendants CHAU and PURE ASSAY attempted to import a steroid called epiandrosterone with false documentation identifying it as melatonin.

Overt Act No. 20:   On or about April 3, 2018, defendants PURE ASSAY and CHAU submitted a prior notice of imported food to the FDA falsely identifying an article of food to be imported in a shipment as "melatonin."  The article was actually epiandrosterone.

Overt Act No. 21:   In or around May 2018, defendants CHAU and PURE ASSAY attempted to import a substance called pramiracetam with false documentation identifying it as magnesium L-threonate.

Overt Act No. 22:   On or about May 8, 2018, defendants PURE ASSAY and CHAU submitted a prior notice of imported food to the FDA

falsely identifying an article of food to be imported in a shipment as "magnesium L-threonate."  The article was actually pramiracetam.

Overt Act No. 23:  On or about July 11, 2018, defendant CHAU sent a letter to the FDA on defendant PURE ASSAY's letterhead admitting that defendant PURE ASSAY's recent shipment of epiandrosterone had been incorrectly declared as melatonin.

Overt Act No. 24:  On or about July 11, 2018, defendant CHAU falsely stated in her letter to the FDA that defendant PURE ASSAY had just discovered the error and that the company was "unaware of the original product."

COUNTS TWO THROUGH FIVE

[18 U.S.C. §§ 545, 2(a)]

In or around the following dates, in Los Angeles County, within the Central District of California, and elsewhere, defendants PURE ASSAY, CHAU, WANG, and HE, and others known and unknown to the Grand Jury, each aiding and abetting one another, knowingly, willfully, and with intent to defraud the United States, made out and passed through the customhouse, false, forged, and fraudulent documents as described below:

| COUNT | DATE (IN OR AROUND) | FALSE DOCUMENTS | ACTUAL IDENTITY |
|-------|---------------------|-----------------|-----------------|
| TWO | May 2016 | Documents falsely describing item for import as L-glutamine | DMAA |
| THREE | March 2018 | Documents falsely describing item for import as L-tyrosine | 1,4-DMAA |
| FOUR | April 2018 | Documents falsely describing item for import as melatonin | Epiandrosterone |
| FIVE | May 2018 | Documents falsely describing item for import as magnesium L-threonate | Pramiracetam |

COUNT SIX

[18 U.S.C. §§ 1519, 2(b)]

In or around September 2017, in Los Angeles County, within the Central District of California, and elsewhere, defendants PURE ASSAY, CHAU, and LUU, and others known and unknown to the Grand Jury, knowingly altered, destroyed, mutilated, concealed, covered up, falsified, and made, and willfully caused to be altered, destroyed, mutilated, concealed, covered up, falsified, and made, a false entry in a record, document, and tangible object with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the United States Food and Drug Administration ("FDA") and United States Customs and Border Protection, both agencies of the United States.  Specifically, defendants PURE ASSAY, CHAU, and LUU created, and willfully caused to be created, a fake shipment of goods that was designed to match (in terms of documentation, labels, number of containers, and weights) several items that had been refused admission into the United States; defendants CHAU, PURE ASSAY, and LUU then sent, and willfully caused to be sent, the fake shipment to a processing facility, where the FDA witnessed the destruction not of the goods that had been refused admission, but instead of the substituted, fake shipment.

11

COUNT SEVEN

[18 U.S.C. § 1956(h)]

1.     The Grand Jury hereby realleges and incorporates by reference paragraphs 1 through 3 of Count One of this Indictment as though fully set forth herein.

2.     Beginning on a date unknown, and continuing to in or around May 2018, in Los Angeles County, within the Central District of California, and elsewhere, defendants PURE ASSAY, CHAU, and WANG, and others known and unknown to the Grand Jury, conspired and agreed with each other to:

        a.     knowingly and intentionally conduct, and attempt to conduct, financial transactions, affecting interstate and foreign commerce, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, and which property, in fact, involved the proceeds of specified unlawful activity, that is, smuggling, in violation of Title 18, United States Code, Section 545, knowing that the financial transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i);

        b.     knowingly and intentionally transport, transmit, and transfer, and attempt to transport, transmit, and transfer, funds from a place in the United States to a place outside of the United States, with the intent to promote the carrying on of specified unlawful activity, that is, smuggling, in violation of Title 18, United States Code, Section 545, in violation of Title 18, United States Code, Section 1956(a)(2)(A); and

c. knowingly and intentionally transport, transmit, and transfer, and attempt to transport, transmit, and transfer, funds from a place in the United States to a place outside of the United States, knowing that the funds involved in the transportation, transmission, and transfer represented some form of unlawful activity, and which funds, in fact, involved the proceeds of specified unlawful activity, that is, smuggling, in violation of Title 18, United States Code, Section 545, knowing that such transportation, transmission, and transfer was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i).

3. The objects of the conspiracy were carried out, and to be carried out, in substance, as follows:

a. Defendants PURE ASSAY and CHAU obtained money as a result of their smuggling activities, and commingled this money with legitimately earned money in defendant PURE ASSAY's bank accounts.

b. Some of the proceeds defendants PURE ASSAY and CHAU obtained as a result of their smuggling activities were diverted into accounts belonging to Unindicted Co-Conspirator Company #1 and personal accounts belonging to defendant CHAU, with the intent of hiding the fact that those proceeds had been obtained from smuggling.

c. Defendants PURE ASSAY and CHAU made numerous transfers of money from accounts in the United States to accounts controlled by defendant WANG in China and Hong Kong in order to pay for the defendants' ongoing smuggling activities in China.

d.    Accounts in China and Hong Kong to which defendants PURE ASSAY and CHAU made payments were in the names of persons other than defendant WANG, with the intent of avoiding government scrutiny of defendant WANG and defendant PURE ASSAY's business activities in China.

FORFEITURE ALLEGATION ONE

[18 U.S.C. §§ 982 and 545]

1.   Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Sections 982 and 545, and Title 28, United States Code, Section 2461(c), in the event of any of the defendant's conviction of the offenses set forth in any of Counts One through Five of this Indictment.

2.   Any defendant so convicted shall forfeit to the United States the following:

a.   All right, title, and interest in any and all property, real or personal constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of each such offense;

b.   Any and all merchandise introduced into the United States in violation of Title 18, United States Code, Section 545, or the value thereof; and

c.   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

3.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b) and Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be

1 located upon the exercise of due diligence; (b) has been transferred,

2 sold to or deposited with a third party; (c) has been placed beyond

3 the jurisdiction of the Court; (d) has been substantially diminished

4 in value; or (e) has been commingled with other property that cannot

5 be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. § 982 and 28 U.S.C. § 2461(c)]

1.   Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(1), and Title 28, United States Code, Section 2461(c), in the event of defendant's conviction of the offense set forth in Count Seven of this Indictment.

2.   Any defendant so convicted shall forfeit to the United States of America the following:

a.   Any property, real or personal, involved in such offense, and any property traceable to such property; and

b.   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.   Pursuant to Title 21, United States Code, Section 853(p) and Title 18, United States Code, Section 982(b)(2), any defendant so convicted shall forfeit substitute property, if, by any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.  Substitution of assets shall not be ordered, however, where the convicted defendant acted merely as an intermediary who handled but did not retain the property in the course of the money laundering offense unless the defendant, in

17

committing the offense or offenses giving rise to the forfeiture, conducted three or more separate transactions involving a total of $100,000.00 or more in any twelve-month period.

A TRUE BILL

/s/

Foreperson

NICOLA T. HANNA
United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division

JOSEPH O. JOHNS
Assistant United States Attorney
Chief, Environmental and
   Community Safety Crimes Section

MARK A. WILLIAMS
Assistant United States Attorney
Deputy Chief, Environmental and
   Community Safety Crimes Section

ERIK M. SILBER
Assistant United States Attorney
Environmental and Community
   Safety Crimes Section

PATRICK R. RUNKLE
DAVID SULLIVAN
RAQUEL TOLEDO
U.S. Department of Justice
Consumer Protection Branch
Trial Attorneys